## Case No. 13,658.

### SUYDAM et al. v. WATTS.

### [4 McLean, 162.] [1]

### Circuit Court, D. Ohio. July Term, 1846.

DECEIT—DAMAGES SUSTAINED—LOSS OF COMMISSIONS—MONEY ADVANCED.

1. A fabricated warehouse receipt, representing that a large amount of pork had been received by defendant, subject to the orders of the plaintiff, irrevocably; which receipt, accompanied by a draft of $12,000, being forwarded, was accepted and paid by the plaintiffs, affords a ground for an action against the warehouse man, to the extent of the injury received.

[2. Cited in Low v. Martin, 18 Ill. 291, to the point that case is the proper form of action.]

3. By making the advance, the plaintiffs, who were commission merchants in New York, expected to sell the property and receive the ordinary commissions.

4. This was in the line of their business, and the only motive they could have had to advance the money.

5. The loss of this constitutes an item of damage which the plaintiff may claim.

6. It was a part of the contract.

7. The defendant is also liable, on the fraud, for the money advanced.

[This was an action by Suydam, Sage & Co. against Watts.]

Ewing & Forman, for plaintiffs.
Mr. Hunter, for defendant.

McLEAN, Circuit Justice. This is an action of deceit. The case made in the three first counts in the declaration is, in effect, this: The defendant executed a receipt, saying that Samuel Adams, on the 24th of November, 1843, delivered to him two thousand barrels of mess pork, marked A, in good order, etc., for, and irrevocably subject to the order of the plaintiffs, and agreeing to deliver the same with all reasonable diligence, so soon as the navigation would permit, to the plaintiffs, in New York, in like good order, dangers of fire excepted, they paying charges, etc., and further specifying that the plaintiffs should hold said pork for sale on commission, and have a lien thereon, not only for the subjoined draft against his (the said Adams's) property, of twelve thousand dollars, but also a general lien thereon for all other liabilities incurred or to be incurred for the consignors.

Adams drew his draft for the above sum, subjoined to the receipt, indorsed the same to the Leather Manufacturers' Bank, and forwarded the draft and receipt to plaintiffs, who accepted the draft and paid the same at maturity to a bona fide holder. But the state-

1 [Reported by Hon. John McLean, Circuit Justice.]

ment was false; no produce, whatever, had been delivered by Adams to Watts, and plaintiffs have lost their reasonable commissions, and are in danger of losing the amount of their advance. To these counts there is a general demurrer.

In the declaration three grounds are assumed, on which damages are claimed: (1) In being defrauded of divers commissions and gains which would have accrued to them on the sale of the said property. (2) In being in danger of losing the moneys paid on the draft. (3) In being otherwise greatly injured and damnified.

The third ground, it is argued, in support of the demurrer, is too general. That if it stood alone, the declaration would be bad for uncertainty. That its only use is, to show the violence, etc., of the defendant's conduct, and give character to the case. 1 Chit. Pl. 398. The cause of action, it is contended, set forth, is not such as necessarily shows that the plaintiffs have sustained damage. It might be all true that the defendant gave a false receipt, and that the plaintiffs were thereby induced to accept the bill, etc., and yet the plaintiffs not be injured. Adams, the drawer of the bill, might have refunded the amount of it to the plaintiffs. Hence the necessity, in pleading, to negative such payment by Adams, and aver the special damage. The rule is, "that when the law does not necessarily imply that the plaintiff sustained damage by the act complained of, it is essential to the validity of the declaration, that the resulting damage should be shown with particularity." 1 Chit. Pl. 396. That another rule is, "that the particular damage, in respect of which the plaintiff proceeds must be the legal and natural consequence of the injury done." And "special damage must be stated with particularity, in order that the defendant may be enabled to meet the charge, if it be false." Id. And the counsel insist that the special damages claimed in this case, are not the "legal and natural consequence of the act complained of." And first it is said the alleged loss of commissions and gains which it is claimed "would have otherwise accrued." The acceptance of the draft, it is said, "had no connection whatever with the commissions." In answer to this, it may be asked, for what purpose does a commission merchant make advances? That is a part of his regular business. It is true, he may charge a commission on his advances, but his business is not to loan money, but to sell property on commission. And as a means to enable him to secure consignments, he makes advances. Was not that the object of the plaintiffs in accepting the draft in this case? It was not that the money would be paid to them with interest and a per cent. for the advance, but that the property should be consigned to them for sale. This was promised by the receipt, and it was in the line of the plaintiffs' business to make such an advance. Then it was the natural and legal conse-

quence of the payment of the advance, that the plaintiffs should have the usual commissions for the sale of the property consigned.

With the view to this action, the transaction must be considered as real, and the legal consequences resulting from it. It having been fraudulent and fictitious, is the ground of complaint, and shows the damage by showing what would have been the benefit, had the transaction been bona fide.

The defendant's counsel would limit the payment of the draft, under the second ground, to the danger of losing the money advanced. If the money had not been advanced, the plaintiffs could not have been in danger of losing it; but the inducement to make the advance, is the question here. Not that the plaintiffs are in danger of losing it, because they made it. The only inducement to the advance was, to secure the consignment of the property, as above stated.

The counsel seems to think that the law, in a case like the present, can give no compensation. That that is done for services rendered; and not because, by the conduct of the defendant, the plaintiffs "have lost the opportunity to make commissions." Why not give compensation in such a case? Is it not a contract? Have not the plaintiffs advanced twelve thousand dollars to secure the sale of the pork; and if the sale be not given to them, may they not claim compensation for a breach of the contract? This does in no respect differ from ordinary contracts made daily, for a breach of which the law gives damages. But it is said, if there was a contract, why not bring the action upon it. There was the form of the contract, but the fraud of the defendant withheld from it the substance of a contract. He has made himself responsible on the ground of fraud, and for that he should be prosecuted. The false warehouse receipt which he gave, saying in it that the property was to be irrevocably held subject to the plaintiffs' order, created a responsibility on the part of the defendant, if the statement had been true, to keep the property safely, and forward it as soon as practicable to the plaintiffs, which he promised to do. The whole being false, he is not the less liable to the plaintiffs for the deceit. And it is not for him, or those who represent him, to say, sue on the contract and not on the fraud. He is liable as the plaintiffs seek to make him liable, and that is a sufficient answer to the demurrer.

As to the second ground, that the plaintiffs are in danger of losing the money paid on the draft, it is said, the allegation does not allege a loss, and consequently they having suffered no damage, can recover none. And it is objected that there is no averment in the declaration, of the inability of Adams to refund the money paid on the draft. Can this be relied on by the defendant, as a sufficient answer to his liability? That Adams, having received the money, is liable, is admitted, but is not the defendant also liable? If he be liable, the plaintiffs are not bound to sue Adams before they can resort to their suit against him.

The advance was made on the faith of the defendant's receipt, as a warehouse man. The plaintiffs looked to the pork, as a security for the money, and by the advance made, it was their own until they were completely reimbursed. Though Adams may be, or may have been, a man of property, the twelve thousand dollars were not paid on his credit. The transaction was commercial in its character, and the defendant as warehouse man, occupied a position of peculiar trust and confidence; and he is bound to answer in that capacity. He was the chief instrument in the fraud, which could not have been successfully carried out, had it not been for his co-operation. He is, therefore, in morals as well as in law, responsible to the plaintiffs for the injuries experienced by them, through his fraud. The demurrer to the first three counts is overruled.